Edna E. DAVIS, an Incompetent, Cecil D. Smith, Guardian, Appellant,

v.

STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE, Respondent.

No. 25867.

Missouri Court of Appeals, Kansas City District.

July 25, 1972.

Fred M. Teel, Teel & Teel, Nevada, Mo., for appellant.

Elmore G. Crowe, Edward D. Summers, Jefferson City, for respondent.

### SHANGLER, Chief Judge.

The Director of the State Department of Public Health and Welfare ordered that claimant's grant of old age assistance be closed on the ground that she had made a transfer of property without receiving fair and valuable consideration, in violation of section 208.010, subsection 2(1) (a), V.A. M.S.[1] The appeal is taken from the judgment of the circuit court affirming the order of the Director.

At the time of the hearing, claimant, a 68 year old spinster, was confined in a nursing home. She had been adjudicated an incompetent by the Probate Court of Vernon County, and Cecil Smith, Public Administrator of that county, was appointed her legal guardian. Claimant owned a life estate in a two-story property on the town square which, until two years before, had been leased for retail purposes but had since fallen into disrepair and disuse. The deterioration, squalor and unproductiveness of the premises are not disputed. These conditions were established by the guardian's testimony and confirmed by the Appraiser's Report given in evidence by the Division of Welfare. The Division's evidence also established that $1500 in taxes were owed on the property for the past four years and that another year's delinquency would have subjected the property to public sale to satisfy payment.

The guardian petitioned the Probate Court to authorize the sale of the life estate so that the cost of caring for the claimant in the nursing home could be met. For about six months, he attempted to find a buyer. He consulted with real estate dealers and with the owners of the contiguous properties, but because of claimant's advanced age and the cost of putting the property in rentable condition, estimated at several thousand dollars, they concluded "(he) didn't have anything to sell". The only offer he received was from Marvin Davison, the owner of the remainder. This offer, however, was not for the payment to claimant of a lump sum, but for

---

[1] "Benefits shall not be payable to any claimant who: (1) (a) Has, or whose spouse with whom he is living has, encumbered, assigned, conveyed, or transferred real or personal property, of which he is the record or beneficial owner, or any interest therein of any value within five years preceding the date of the investigation without receiving fair and valuable consideration. The date of recording or filing of any instrument affecting property that is encumbered, assigned, conveyed or transferred by written instrument shall be considered as the date such encumbrance, assignment, conveyance or transfer occurred. *'Fair and valuable consideration'* as used herein *means money* or real or personal property received at the time of the transaction approximately equal to the value of the property encumbered, assigned, conveyed or transferred, and shall not for the purpose of this section be construed to include support, services, or other advancements made or to be made by a relative to a claimant. A payment of a loan to a relative may be recognized and eligibility not affected if the claimant can establish to the satisfaction of the division of welfare that the loan was bona fide and the proceeds of the loan were used by the claimant for his or his dependents' support or benefit." (Emphasis supplied.)

the payment of $50 for each month of her life with a minimum total payment of $1,000. Sale of the life estate was made on these terms, and the sale was approved by the Probate Court.

The evidence of the Division of Welfare consisted of the Appraiser's Report and the testimony of a caseworker. The real estate was appraised for the Division at $5000 and claimant's life estate, computed according to the Carlisle Table as provided in section 442.530, V.A.M.S., was determined to have the present gross value of $2040.90. The caseworker acknowledged that neither she, nor any one else for the Division, had made any inquiry as to whether the real estate could have been sold for $5000 or if there was any market for the life estate.

The Director determined that the transfer of the life estate was not for a "fair and valuable consideration" as defined in section 208.010, subsec. 2(1) (a), V.A.M.S., and ordered that claimant be stricken from the old age assistance rolls for the period prescribed by law. In support of his decision, the Director entered these Findings of Fact: "Claimant inherited a life estate in certain real estate located in Nevada, Missouri. This property was appraised at $5000.00 and claimant's life estate interest was calculated to be $2,040.90. This property was sold for the following consideration: $50 per month for the lifetime of claimant with a minimum of $1,000 guaranteed."

Claimant contends the decision of the Director was arbitrary and unreasonable because it assumes that the evidence of the appraised value of the real estate and of the actuarial value of the life estate is evidence of their open market value, inferences not supported by the record.

■ Our review of this appeal is upon the record of the hearings before the Director. We are authorized by section 208.100, subsec. 5, to determine whether the Director's decision was arbitrary and unreasonable. If the Director's decision

was not based on substantial evidence, his findings of fact and order will be deemed arbitrary and unreasonable and will be remanded for redetermination. Wallin v. State Dept. of Public Health and Welfare, Mo., 422 S.W.2d 345, 347 [1]; Lee v. State Dept. of Public Health and Welfare, Mo.App., 480 S.W.2d 305, 308 [1]. Substantial evidence is evidence which, if accepted as true, has probative force upon the issues—"it is evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith". Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 820 [5, 6]. But where the Director's decision rests on inferences which may not be logically drawn from the evidence, but requires the assumption of facts beyond the scope of the record, such decision is not supported by substantial evidence. Koplar v. State Tax Commission, Mo., 321 S.W.2d 686, 695 [8]; Brawley v. Esterly, Mo., 267 S.W.2d 655, 659 [5].

The statutory provision which governs the issues, section 208.010, subsec. 2(1) (a) defines "fair and valuable consideration" to mean: "Money or real or personal property received at the time of the transaction approximately equal to the value of the property . . . transferred". It is evident that the finding of the Director that "(t)he transaction made on behalf of claimant does not comply with this part of the statute" assumes (1) there was evidence the life estate had "value" within the meaning of the statute (2) the Division's calculation that the actuarial worth of the life estate was $2040.90 established such "value", and (3) the remainderman's agreement to pay claimant $50 for each month of her life with a minimum total payment of $1000 was not the money or property equivalent of $2040.90.

■ The Director has obviously misconstrued the statute upon which he relies to deny claimant benefits as well as the effect to be given the evidence. It has been determined that the meaning of the term "value" as used in our public assistance

statutes means "market value". Akers v. Division of Welfare, Mo.App., 224 S.W.2d 850, 853 [1] [2]. An estate for life in land is real estate. Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, 125 S.W. 486, 494. The market value of real estate is the price which one desiring but not compelled to purchase will pay to one desiring but not compelled to sell. Union Electric Company v. Saale, Mo., 377 S.W. 2d 427, 429 [1-6]. The evidence before the Director, however, was all to the effect that there was no market for the sale of the life estate. The guardian's persistent efforts were chilled by two stark economic realities, the cost of restoration of the property to productive use and the claimant's advanced age. He was told by those knowledgeable of such value that "(he) didn't have anything to sell". Since a market is essential to the determination of market value, there can be no market value in the absence of a market. Nor does the Division's evidence of the appraised value of the fee tend to prove the market value of the life estate calculated thereon in the absence of a showing that a willing·buyer would pay that price to a willing seller.

■ The Director's decision rests upon an inference which cannot be drawn from the facts in evidence: that the market value of the life estate was $2040.90. Since there was no such proof, the decision is not supported by substantial evidence, the findings of fact and order are arbitrary and unreasonable, and the cause must be remanded to the Director for redetermination.

2. See, also, Fraher v. Department of Public Health and Welfare, KCD 25843, Mo. App., 484 S.W.2d 663, adopted concurrently herewith, which holds that the term "current market value" as used in the Department's Rule 13 defining the maximum worth of real estate which may be retained

■ The burden of proving the incompetent ward's eligibility for public assistance was on the guardian. Thornsberry v. State Department of Public Health and Welfare, 365 Mo. 1217, 295 S.W.2d 372, 376 [5]. All of the substantial evidence before the Director tended to prove that the life estate had no market value, so that the transfer between the guardian and remainderman did not infringe section 208.010, subsec. 2(1) (a), V.A.M.S., and the eligibility of the ward to receive public assistance remained unimpaired. This is not to say, however, that the guardian was required to sacrifice the life estate to the continuing waste of taxes which the estate could not pay and the deterioration which it could not remedy. The offer to purchase the life estate by the remainderman was the only one received for the property and was made only after the guardian threatened a partition suit for the sale of that burdensome life estate. The sale was made on terms to ensure the minimum resources necessary (when coupled with the welfare benefits she was then receiving) to keep the ward in a condition of human decency at the nursing home. The exchange by a welfare recipient of property which has no market value for "money or real or personal property" does not violate the governing statute.

The judgment of the Circuit Court is remanded with directions that the cause be remanded to the Department of Public Health and Welfare for a redetermination.

All concur.

by a recipient of public welfare means "fair market value", which is itself the more commonly used equivalent of "market value". 55 C.J.S. Market, "Market Value" p. 789; Black's Law Dictionary, "Market Value".