Henri VELGHE and Irma Velghe,
Respondents,

v.

STATE DEPARTMENT OF PUBLIC
HEALTH AND WELFARE, Appellant.

No. 23470.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

---

Thomas F. Eagleton, Atty. Gen., Howard L. McFadden, Asst. Atty. Gen., Jefferson City, for appellant.

Harvey Burrus, Independence, for respondents.

MAUGHMER, Commissioner.

The Director, State Department of Public Health and Welfare, removed respondents from the Old Age Assistance rolls after finding they had sold real estate in which they owned a one-half interest without receiving any money or property in exchange. On appeal the circuit court held that the Director's finding was arbitrary and unreasonable because not supported by substantial evidence. The Department appealed from that judgment.

■ The transcript of the hearing before the referee constitutes the complete record in this case. The Director's findings and decision are based upon the evidence there presented, and unless therein supported by substantial evidence, such decision may not stand. Likewise, the circuit court and this court must assemble and determine the facts solely from the transcript of the hearing before the referee. As concisely as we are able, we shall summarize those facts.

Four witnesses—respondents, their daughter Mary Averill Gordon and Helen Jasper, caseworker, welfare office at Independence, Missouri—testified at the referee hearing, which was held on March 16, 1960. Some facts are neither disputed nor questioned. In 1947, respondents, who had been living by themselves in their residence on East 10th Street, Independence, Missouri, sold that property for $4,000 and "moved in" with their daughter Mary Averill, her husband John Averill and their child. The Averill property was located at 2348 Vermont in Independence. Title at the time was in the names of Mary and John Averill, husband and wife.

In 1948, respondents made inquiry at the welfare office regarding old age assistance. Helen Jasper, caseworker, said it appeared respondents had a bank account of $1400 and, therefore, were ineligible. In 1951, respondents filed their formal application for benefits. Again, according to Helen Jasper, it was denied "because they were living with the daughter and the daughter was employed". In February, 1954, their application was approved and benefits were paid continuously thereafter until February 19, 1960, the effective date of the Director's order in the present controversy.

During the year 1951, respondents' daughter Mary Averill and her husband John Averill had marital difficulties which culminated during that year in a divorce. According to the testimony of Mary Averill, pursuant to advice from her attorney, title to the 2348 Vermont property (in 1951 and after the divorce) was placed in "Mary V. Averill, single and unmarried, and Henri Velghe and Irma Velghe, husband and wife, as joint tenants with right of survivorship and not as tenants in common". This change in title as it was actually carried out apparently involved three deeds: (1) John and Mary Averill deeded to Katherine A. Andrews, a single person, secretary in the lawyer's office and straw party; (2) Katherine A. Andrews to Mary and the Velghes; (3) a quit-claim deed from John Averill to Mary and to her parents was also referred to in the testimony. Mary stated that her parents were included in the title and vested with survivorship rights in order that, if Mary should die, her divorced husband, as guardian of their minor child, would be unable to take control of the property.

Shortly thereafter the Vermont Street property was sold. Respondents with Mary, signed the conveyance deed, but Mary received the proceeds. However, she immediately purchased for $9500 a residence property at 3819 Agnes Street in Independence and again the title was taken in all three names and with right of survivorship. Respondents, Mary and Mary's child occupied this property until 1953, when Mary married a Mr. Gordon and moved to Alaska. Respondents continued to occupy the premises until September, 1959, paying $35, and a part of the time $37 per month as rent. In September, 1959, Mary sold the property and received $7,950 therefor over and above the mortgage. Again respondents signed the conveyance deed and again all agree Mary received and retained all the proceeds.

Respondents and Mary each testified that the $4,000 respondents received from the 10th Street property in 1947, was used up in living expenses, and that respondents paid nothing whatever for either the Vermont or the Agnes Street residences; that they were made partial holders of record title upon the advice of Mary's divorce attorney and to keep her divorced husband from securing control of it in the event of Mary's death.

None of the deeds mentioned herein were produced or received in evidence, but were described rather fully by the witness Mary Averill Gordon and it is apparent from some of the referee's questions that the welfare office had done some investigation as to the deeds. On the date of the hearing—March 16, 1960—respondents Henri and Irma Velghe were 74 and 76 years old, respectively.

Upon this evidence the Director entered these findings of fact:

"Henri Velghe, 74, and his wife, Irma, 76, live together in rented property at 110 East College, Independence, Jackson County, Missouri. In September, 1951, they purchased property at 3819 Agnes Street with the title in their names together with their daughter, Mary V. Averill. This property was sold in September, 1959, and after deducting the mortgage their daughter received $7,950.00. Claimants did not receive any of this money. It is found they had a one-half interest in this property which was transferred in September, 1959, by them and their daughter for a net amount of $7,950.00 without them receiving any money or other property in exchange. The average monthly grant in Old Age Assistance paid a married couple in September, 1959, was $117.82 per month".

It was further the Director's decision that respondents be dropped from the rolls and be declared ineligible for public assistance for 38 months from and after October 1, 1959. The Director based his order

upon the provisions of Section 208.010, V.A. M.S., 1959.

"2. Benefits shall not be payable to any claimant who:

"(1) (a) Has made, or whose spouse with whom he is living has made, an assignment, conveyance or transfer of real or personal property or any interest therein of any value within five years preceding the date of the investigation without receiving fair and valuable consideration for said property."

Under Section 208.100(5), V.A.M.S., 1959, which provides procedure on appeal to the circuit court, that court is authorized to remand for redetermination if in its judgment the Director's "decision was arbitrary and unreasonable". Upon appeal or review the circuit court is also required to determine whether or not a fair hearing has been granted the applicant.

The scope of judicial review as to the findings of the Director is set forth by the Supreme Court en Banc. in Collins v. Division of Welfare of the State of Missouri, 364 Mo. 1032, 270 S.W.2d 817, 819, which we quote:

"If the findings and order of the Director are supported by substantial evidence in the record before us, we may not disturb the judgment appealed from and must affirm it. But if· the Director's findings are contrary to the determinative undisputed facts, and are therefore arbitrary and unreasonable we must so find, and reverse the judgment. (cases cited)".

In the same case, 270 S.W.2d at page 820, the court said:

"'Substantial evidence' is evidence which, if true, has probative force upon the issues, i. e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them".

The Department, as appellant on appeal, makes two assignments of error. It says under Assignment B, that the circuit court received additional evidence at the appeal hearing, and this was error. The court did receive an affidavit by respondents' counsel. The reception of any additional evidence was improper and we shall not consider the same on our review. Assignment A asserts there was substantial evidence to support the Director's decision and, therefore, the circuit court judgment that it was arbitrary and unreasonable and was not supported by substantial evidence is erroneous.

In Choate v. State Department of Public Health & Welfare, Mo.App., 296 S.W.2d 189–195–196, we find the same type of case. Claimant was removed from the rolls by the Director, the circuit court remanded, and on appeal the court of appeals affirmed the Director's decision. In the Choate case claimant alone purchased the property in 1925; in 1932, she conveyed to her son's wife, subject to two deeds of trust; the children reconveyed to claimant, who paid the indebtedness and then deeded to her son. In 1948, 1950, 1951 and 1954, she signed property statements listing the property as belonging to her. These facts amount to substantial evidence that she owned the property and when she conveyed for no consideration, justified the Director's decision to drop her from the rolls.

The evidence in our case is quite different. Claimants sold the only property which they owned in their own names in 1947 for $4,000. When, in 1948, they talked with the welfare office caseworker, their only asset, at least as reported by the caseworker, was a $1400 bank account. Respondents and their daughter say that in 1951, when they received part title to the Vermont Street property, they had lived up all their money. There is neither evidence, nor even a suggestion that respondents in 1951, or at any time thereafter, had

any funds to pay on the purchase of real estate or that either actually paid anything on the purchase price for either property.

On appeal, appellant asserts that the deed with respondents' names thereon shows that they had an interest of one-half in the property which was sold for $7,950, and they received no consideration for deeding away their interest. Appellant says further that although the Director found that respondents had *purchased* the property, whether they did or not is really unimportant, since they either purchased it or received it by gift, and had an interest therein which they deeded away for an inadequate consideration.

■ Now, while the Director is not a court, nevertheless, he must, in arriving at his decisions, weigh the evidence. We recognize that a claimant has the burden of proof and that the Director may decide a claim solely upon lack of credibility of uncontroverted and unimpeached testimony. Thornsberry v. State Department of Public Health and Welfare, 365 Mo. 1217, 295 S. W.2d 372, 376. However, from the record here we find no substantial evidence that respondents "purchased" the property as the Director specifically found. He has based his decision solely on the contents of the deed, without considering the uncontradicted explanation for respondents' names being therein. He has not suggested even a possible source from which respondents might have secured the money to make the "purchase" which he found. It does not affirmatively appear that his decision is based upon disbelief of the testimony of respondents and their daughter. In many instances it is necessary to look back of and beyond the deed to determine what interest, if any, a named grantee has in the property. If *any deed* is conclusive, then Katherine Andrews, the lawyer's secretary and straw party, would, if she had been a recipient of old age benefits, be barred thereafter because she received none of the proceeds.

■ Appellant says the Agnes Street property was purchased with proceeds from the sale of the Vermont Street property. It was the latter property that was involved in the divorce suit and there is no evidence that respondents invested one dollar in it. In its brief appellant says the Director's decision is supportable because of statements against interest, made by the daughter Mary Averill Gordon. In the first place she is not a party to this litigation. Second, these so-called statements against interest were legal conclusions made in response to inquiries by the referee and to the effect that "her parents' names on the deed gave them an interest" and that "her father might have made her give him half the proceeds". Such testimony was improper, called for legal conclusions and will not support the Director's decision.

In the recent case of Powers v. State Department of Public Health and Welfare, Mo.App., 359 S.W.2d 23, the Director struck an elderly widow from the rolls. This widow owned a house and little acreage in the country. She offered to give her daughter and son-in-law a building lot on the acreage if they would build a house thereon and live near her. The lot selected was surveyed and the children built the house but before the tract had been deeded to them. Then the· mother deeded the lot, which at that time had the house on it, to the children. The Director ruled that she was owner of the house and lot which she conveyed without receiving adequate consideration. The circuit court remanded for redetermination. This court affirmed the circuit court and the Supreme Court denied certiorari. In that case there was no substantial evidence that the mother was the real owner of the house, regardless of the fact that she held the record title. In fact, the evidence was conclusive that she did not own the house and had contributed nothing toward the cost of building it. It was apparently the Department's position that a determination as to who held "the record title" was conclusive and that to consider other evidence would require ap-

plication of equity which only courts may apply.

In our case there is no evidence (except the record title) that respondents were the real owners of the house or any part of it. The evidence is rather conclusive that they were not, and had contributed no part of the purchase price. In fact, there is no evidence which raises even a strong suspicion that they possessed any funds with which to buy either the Vermont or Agnes Street property, in whole or in part. In 1951, the Vermont property belonged to Mary Averill and her husband. The record title and all the oral testimony so show. Then the Averills were divorced and claimants became record title holders in part, but there is no evidence they paid anything therefor. Then the Vermont property was sold and the proceeds, according to all the testimony, used to buy the Agnes Street residence. If claimants paid nothing on the purchase price of either of these properties, then they were not purchasers in whole or in part. If claimants were not purchasers and were given only what claimants and daughter Mary say they were given—namely no real and substantial ownership—then the consideration they received for deeding away such interest was not inadequate.

We do not believe the Director may blindly close his eyes and his mind to all of the evidence except the deed in every case. This court, therefore, in this case, is in accord with the ruling and judgment of the circuit court.

The judgment of the circuit court remanding to the Department for a redetermination of the issues is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.